FILED
FEB 12 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TANGRAY MARTIN, as mother and next best friend of DAQUEL MARTIN, a minor; and DAVONTAE MARTIN, a minor; | ) ) ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) |
| THE CITY OF CHICAGO, A Municipal Corporation; and Chicago Police Officer's BRIAN SHERMAN, Star 5742; JASON SANTIAGO, Star 15403; and Unknown Chicago Police Officers John Does and Jane Roes 1-10; | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**07CV828**
**JUDGE HIBBLER**
**MAG. JUDGE SCHENKIER**

Judge
Magistrate

Jury Demand

Jury Demand

## COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4. Plaintiff TANGRAY MARTIN is the mother of minors DAQUEL MARTIN and DAVONTAE MARTIN. TANGRAY MARTIN is a citizen of the United States, and a resident of the City of Chicago.

5. DAQUEL MARTIN and DAVONTAE MARTIN are minors. DAQUEL MARTIN was born on February 28, 1996, on the date of the incident alleged below, DAQUEL

MARTIN was 10 years-old. DAVONTAE MARTIN was born on October 12, 1993, on the date of the incident alleged below, DAVONTAE MARTIN was 12 years-old.

6. Defendant police officers are duly appointed and sworn City of Chicago police officers. At all times material to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

7. The Defendant-Officers are sued in their individual capacities.

8. The CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

**Facts**

9. On or about August 20, 2006, at about 4:30 p.m., DAQUEL MARTIN and DAVONTAE MARTIN left their house at 956 North Massasoit Avenue, City of Chicago, to go play basketball at a neighborhood park.

10. As they were walking they observed some boys near Douglas school. DAQUEL MARTIN and DAVONTAE MARTIN observed the boys running, and also observed a marked Chicago police car coming through an alley.

11. Upon information and belief the names of the boys are: Tyrone, Kiki Johnson aka Kimonte Johnson, and Tyrell Clark. Tyrell Clark was caught by the police.

12. The Defendant-Officers in the police car got out of the car and approached DAQUEL MARTIN and DAVONTAE MARTIN.

13. DAQUEL MARTIN and DAVONTAE MARTIN were placed in handcuffs and under arrest.

14. DAQUEL MARTIN and DAVONTAE MARTIN had not violated any city, state or federal law. Defendant-Officers did not have any reason to believe that they had violated, or were about to violate, any city, state or federal law. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop, detain, or search DAQUEL MARTIN and DAVONTAE MARTIN.

15. DAQUEL MARTIN and DAVONTAE MARTIN were ordered to get down.

16. DAQUEL MARTIN asked, "What did we do?"

17. Defendant-Officers told DAQUEL MARTIN to shut up and not say anything.

18. Then a Defendant-Officer grabbed DAQUEL MARTIN and slammed his head against the police car.

19. The Defendant-Officer then put his elbow into DAQUEL MARTIN's neck and held him down.

20. DAQUEL MARTIN and DAVONTAE MARTIN were subjected to repeated oral abuse and profanity from the Defendant-Officers.

21. Other police cars arrived on the scene.

22. After some time, DAQUEL MARTIN and DAVONTAE MARTIN were put in a squadrol which had arrived on the scene.

23. The other boys present were also arrested and put in the wagon.

24. DAQUEL MARTIN and DAVONTAE MARTIN were taken to a police station, and released after about 2-3 hours.

25. While DAQUEL MARTIN and DAVONTAE MARTIN were in custody at the police station, they were alone and deprived access to visiting adults and relatives, including their grandmother, Mary Martin, who had arrived at about 5:00 p.m., and mother.

26. After being released from the police station, DAQUEL MARTIN was taken to a hospital to receive treatment for the injuries he received from the above-described incident.

27. Each individual Defendant-Officer acted willfully, wantonly, maliciously, oppressively, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

28. As a direct and proximate result of the acts of the Defendants described above, DAQUEL MARTIN and DAVONTAE MARTIN have suffered and continue to suffer damages including loss of physical liberty, emotional distress, physical pain and suffering, mental anguish and humiliation, and other damages.

## COUNT I
### (42 U.S.C. § 1983 – False Arrest/Imprisonment)

29. Plaintiff realleges paragraphs 1 through 28 as if fully set forth herein.

30. DAQUEL MARTIN was arrested. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop or detain DAQUEL MARTIN.

31. The actions of Defendant-Officers in arresting DAQUEL MARTIN without any legal justification or probable cause violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches and seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – False Arrest/Imprisonment)

32. Plaintiff realleges paragraphs 1 through 28 as if fully set forth herein.

33. DAVONTAE MARTIN was arrested. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop or detain DAVONTAE MARTIN.

34. The actions of Defendant-Officers in arresting DAVONTAE MARTIN without any legal justification or probable cause violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches and seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – Excessive Force)

35. Plaintiff realleges paragraphs 1 through 28 as if fully set forth herein.

36. Defendant-Officers slammed DAQUEL MARTIN's head into a police car, and elbowed him in the neck.

37. The actions of Defendant-Officers violated DAQUEL MARTIN's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officer;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IV
### (42 U.S.C. § 1983 – *Monell* Claim against the City of Chicago)

38. Plaintiff realleges all of the above paragraphs and counts, as if fully set forth herein.

39. At all times material to this Complaint, there existed in the City of Chicago the following practices, policies and customs:

    a. stopping, detaining, arresting, and searching persons without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis;

    b. arbitrary use of excessive force against suspects, arrestees, detainees and other civilians;

    c. denying medical care to arrestees, including those who have been beaten by police officers;

    d. mental abuse, oral abuse and assault of arrestees, detainees, and other civilians;

    e. a *code of silence* in which police officers fail to report police misconduct;

    f. said *code of silence* also includes police officers either remaining silent or giving false and misleading information during trials and official investigations to cover up misconduct, and protect themselves and other officers;

    g. failure to adequately train, supervise and discipline police officers in the categories and fields of police work addressed in sub-paragraphs a - f above;

    h. failure to adequately investigate citizen complaints against police officers;

    i. failure to adequately discipline police officers for misconduct;

j. through the Office of Professional Standards (OPS), conducting inherently deficient investigations of citizen complaints of police misconduct in which an officer is disciplined in a minuscule percentage of cases, thereby encouraging even more police misconduct;

40. The actions of the Defendant-Officers as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago, the Chicago Police Department, and its police officers.

41. One or more of the following entities, authorities and officials are responsible for the policies, practices and customs alleged above: the Mayor of Chicago, the City Council, the aldermen, the Chicago Police Department, the Chicago Police Board (to which the City of Chicago has delegated *de jure* final policy-making authority for the Chicago Police Department); the members of the Chicago Police Board, the Office of Professional Standards, and Superintendent Phil Cline (to whom the City of Chicago has delegated *de facto* final policy-making authority for the Chicago Police Department regarding the matters complained of herein).

42. The practices, policies and customs described above are widespread, permanent and well-settled, and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

43. The municipal policy-makers of the City of Chicago acted with deliberate indifference to the rights of Plaintiffs in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

44. By their inaction and failure to correct the above-described practices, policies and customs, municipal policy-makers tacitly approve and thus indirectly authorize the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against the City of Chicago;

b) Award Plaintiff compensatory damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT V
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

45. Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

46. The acts of the individual Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of their employment.

47. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the actions of the Defendant-Officers.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from the actions of the Defendant-Officers.

**Plaintiff demands trial by jury on all counts.**

Respectfully submitted,

Lawrence V. Jackowiak
*Attorney for Plaintiff*

Lawrence V. Jackowiak
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595
Attorney No. 6231003